[Civ. No. 14482. First Dist., Div. One. Mar. 29, 1951.]

L. C. JENSEN, Respondent, v. UNION PAVING COMPANY (a Corporation) et al., Appellants.

Henry F. Wrigley for Appellants.

Mathew Weber for Respondent.

PETERS, P. J.—This is a case where the evidence, the findings and portions of the judgment are most confusing, ambiguous, and, in some respects, inconsistent. The facts are as follows:

Plaintiff L. C. Jensen and defendant Union Paving Co. are duly licensed contractors. Union, on August 10, 1946,

entered into a contract with South San Francisco to construct certain improvements for the city in accordance with certain plans and specifications. The defendant United Pacific Insurance Company executed a bond as surety for Union to guarantee payment by Union for materials, work or labor performed under the contract. The bond also provided for a reasonable attorney's fee. On August 24, 1946, Jensen, as a subcontractor, entered into a contract with Union to install the portion of the main improvement consisting of certain sewers and storm drains for a total contract price of $41,325.80. This contract is in the form of a letter signed by Jensen and accepted by C. L. Corson for Union. It reads as follows:

"Dear Sir:

"I agree to install sewers and storm drains in Brentwood, South San Francisco, for the following prices. [Here are set forth in detail the work and unit prices totalling $41,325.80.]

"These prices include furnishing all labor, materials and equipment necessary to install the work according to plans and specifications.

"Monthly progress payments in the amount of 90% of the work completed are to be made and final payment is to be made 30 days after the acceptance of the work by the engineer in charge.

Yours very truly,

L. C. Jensen"

The complaint alleges that Union failed to make the contract payments; that the reasonable value of the work done by Jensen, with extras, is $53,269.14; that $26,449.54 has been paid; that a balance of $26,819.60 is due and owing, plus a reasonable attorney's fee. The second amended answer of the two defendants denies that Union failed to perform its part of the contract and alleges that Jensen performed only a part of his contract; that the reasonable value of the work performed by Jensen does not exceed $32,276.44, and that $30,661.19 has been paid to Jensen. The answer then, by way of "setoff and counterclaim" alleges that, in certain respects, Jensen breached his contract by refusing to perform and complete the work called for by the contract, and that defendants were required to correct these defects to their damage in the amount of $6,308. The specific items, nine in number, are set forth in the pleading. Because some of these items will be referred to later in this opinion, they should here be summarized. They are:

1. Masonry work on all manholes and catchbasins was

installed below the required elevation and had to be corrected at a cost of $350.

2. Raising manholes at a cost of $783.83.

3. Cost of supplying missing manhole frames and covers—$127.12.

4. A trench over the 48-inch storm sewer was not backfilled in accordance with plans and specifications, and that portion which was on Hazelwood Drive and Maywood Way easterly settled. Jensen refused to remedy this, and Union removed the defective filling, rebackfilled and repaved at a cost of $2,448.35.

5. Jensen failed and refused to remove surplus material after backfilling the 48-inch sewer, and Union did so at a cost of $967.20.

6. Stakes were damaged by reason of the reexcavating of the 48-inch sewer, and had to be replaced at a cost of $36.

7. Catchbasins on two corners of Maywood Way and Wildwood Drive were not constructed to conform with the lines and grades as shown on the plans. Jensen refused to correct this, and Union rebuilt them to conform to the plans at a cost of $112.10.

8. Jensen damaged certain sidewalks, which had to be corrected at a cost of $85.

9. The backfilling in connection with the trench over the 48-inch sewer, at the extreme northwest portion of Wildwood Drive at the parking lot near Hazelwood Drive settled due to improper compaction, which Union had to remedy at a cost of $1,398.40.

On these pleadings the cause proceeded to trial. At the commencement of the trial the parties stipulated that there was a duly executed contract between the city and Union, a copy of which was admitted into evidence; that the defendant insurance company executed a material and labor bond which provides for a reasonable attorney's fee; that all work performed and here involved was performed pursuant to the Improvement Act of 1911; and that plaintiff had filed a verified claim with the city. At the trial the main issues revolved around the precise amount already paid to Jensen, the necessity for and the value of certain work performed by Union in correcting what it claimed were defects in Jensen's work, and the value of the work performed by Jensen. The evidence on these issues was most confusing. The trial judge ordered the plaintiff to prepare proposed findings, and then filed a memorandum opinion in which he stated, in part:

". . . The Court feels that the only reason Union Paving

Co. did not make payments to Plaintiff is because of Plaintiff's failure to complete the work; and, in the opinion of the Court, the amount due Plaintiff could not be determined until a trial had been had. However, the Court feels that Plaintiff is entitled to the fair value of the work done by him after deducting credits to which Defendant is entitled which net sum is the amount of $10,069.05.

''Therefore, the Court will enter judgment for Plaintiff for $10,069.05 plus an attorney fee in the sum of $1,000.00, costs and interest from the date of entry of judgment.''

Findings were prepared and signed and judgment entered in favor of plaintiff on July 27, 1949, for $10,069.05 plus the $1,000 attorney's fee. Notice of entry of judgment was mailed to defendants July 29, 1949. On August 8, 1949, defendants moved for a new trial on the grounds of insufficiency of the evidence, that the decision is against the law, errors in law, and newly-discovered evidence. The motion was supported by affidavit, and plaintiff filed a counteraffidavit. The court failed to pass on this motion for a new trial within 60 days from the service of notice of the entry of judgment as required by section 660 of the Code of Civil Procedure. After the 60-day period had expired the trial court attempted to reopen the case by a minute order dated October 3, 1949. That order reads as follows:

''(Motion for a New Trial heretofore submitted)

''In lieu of granting a new trial, the court vacates and sets aside the findings and judgment and reopens the case for further proceedings and the introduction of additional evidence on (1) the sewer repair bill in the sum of $1,398.40, (2) the payments received by check by plaintiff and (3) the reasonable costs of remedying the other items of work referred to in Par. VIII(8) of defendants' 2nd amended answer. Deft. are granted leave to further amend said answer by pleading said items and the alleged reasonable costs of remedying same.''

This order was ineffective. The motion for a new trial, not having been acted upon within 60 days from service of notice of the entry of judgment, was denied by operation of law, and the order of October 3, 1949, made after that date was void. (*Kraft* v. *Lampton*, 13 Cal.App.2d 596 [57 P.2d 171].)

The findings of fact entered at the conclusion of the trial purport to dispose of the basic issues involved. Finding VIII sets forth that from October 18, 1946, to June 2, 1947,

plaintiff supplied work, labor and materials under the contracts. The court then finds that it is untrue that the reasonable value of this work, labor and materials was $53,269.14 as alleged in the complaint, and that it is untrue that Union breached its contract with Jensen in failing to pay him. This last finding was apparently predicated on the thought of the trial judge that a reasonable dispute existed between the parties and a lawsuit was necessary to ascertain the precise amount due. The court then finds (finding XI) that the *agreed value* of the work to be performed by Jensen was $41,102.90, and that there has been paid to Jensen (finding XII) or to his account the sum of $27,541.87; that plaintiff became indebted to defendants for the use of equipment in the sum of $96.68, for which defendants are entitled to credit, but Union is not entitled to certain other designated credits. In finding XIII it is found that plaintiff did not perform and complete the work in conformity to the plans and specifications, and Union had to remedy these defects to their damage in the sum of $3,395.30. This is the total of items 2, 3, 4 and 6 set forth in defendants' answer and itemized earlier in this opinion. The court then finds (finding XIV) as untrue certain allegations of the second amended answer which refer to items 1, 5, 7, 8 and 9 there set forth and itemized earlier in this opinion. In finding XV the court finds that the balance due from defendants to plaintiff is $10,069.05, plus a reasonable attorney's fee, fixed (in finding XVII) at $1,000. Judgment was entered accordingly, and defendants appeal.

It is extremely difficult to ascertain just how the court arrived at some of the figures contained in the findings, and the briefs do little to clarify the situation. Each one of the basic findings is unsupported or inconsistent with other findings.

In finding XI the court fixes the "agreed value" of respondent's work at $41,102.90. The contract price was $41,325.80. Respondent states (Res. Br. p. 3) that the finding is based on the agreed contract price. This is obviously not so. There are other figures in the record. Jensen's last bill sent to Union is dated June 3, 1947, and it fixes the figure at $41,220.80. Deutsch, an engineer working under Estes, the city works engineer, itemized the total cost of the job and fixed the figure of Jensen's work at $41,468.15. Exhibit 5 is an itemized summary of Jensen's testimony and shows that on the trial Jensen testified that the total value of his work

was $41,266.94. But this included $146.14 for extras. If this be deducted from the $41,266.94, the result is $41,120.80, which is within $17.90 of the amount fixed in the finding as the "agreed" price. The precise finding of the court is unsupported.

The trial court, in finding XII, fixes the amount paid to Jensen by Union at $27,541.87. There must be an error in this figure. Union introduced bills by it totalling $22,381.36. Some of the items contained in this bill were challenged by Jensen. Dowling, the president of Union, testified that $24,419.97 plus $5,744.30 had been paid to respondent. Jensen testified to having received four payments from Union totalling $5,000, and stated that Union paid bills of $22,449.54. He was positive that the total amount paid to him was $27,449.54. (Rep. Tr. 21.) But later in the trial the court and counsel got considerably confused over the amount of these payments to Jensen. This confusion was caused by the fact that Jensen was doing other work for Union and sometimes payments on several jobs were included in one check. Thus, defendants' exhibit 23 is a check to Jensen for $9,031.84, which admittedly covered several jobs. Dowling testified that $5,744.30 of this check was meant to apply to the job here involved. Starting at page 195 of the reporter's transcript appears evidence from which it is apparent that the trial court and counsel confused this $5,744.30 with the $5,000 previously testified to by Jensen. The two are clearly separate transactions. Jensen testified that no part of the $9,031.84 was applied by him to this job. Thus, the evidence would sustain a finding that $5,744.30 of this check was applied to this job or nothing at all. But the trial court admittedly allowed a credit to Union of $2,942.90 as being applied from this check on the job here involved. This was apparently based on a misunderstanding of Jensen's testimony. He first testified that he applied $2,942.90 of the check to this job (R.T. 195, l. 16), but a few lines later in the record (R.T. 195, l. 22) he corrected this testimony and stated that not one cent from the check had been applied on this job.

In addition, in arriving at the figure of $27,541.87 the trial court apparently disregarded Jensen's admission that he had received four checks from Union totalling $5,000. The court recognized that it had committed an error in this finding in fixing the sum of $27,541.87 as the amount paid by Union, because one ground of its abortive order of October 3, 1949, was that additional evidence should be taken on the

issue of "the payments received by check by plaintiff." This finding is unsupported by the evidence.

This is equally true of a series of other findings. In finding XII the court allowed a credit to Union of $96.68 for the rental of equipment, and then specifically denied a credit for a discount to Gladding McBean Company of $60.33; the so-called De Velbiss deduction of $65.61; investigation costs of $83.54; and a payment to Estes Engineering Company of $48.00. Then in finding XIII the court found that Union was required to remedy certain defects in respondent's work as follows: Cost of raising certain manholes, $783.83; cost of supplying manhole covers, $127.12; cost of repairing trench over 48-inch sewer, $2,448.35, and cost of replacing survey stakes, $36. Thus, in this finding, the court found that Union was entitled to a credit of $3,395.30. Then in finding XIV the court found certain allegations of the answer to be untrue. These were the allegations claiming credits for items 1, 5, 7, 8 and 9 alleged in the answer and set forth earlier in this opinion. Union admits that there was a conflict in the evidence as to items 1 and 5, but claims that it was error to deny to it credits on items 7, 8 and 9. Item 7 relates to two catchbasins which Union claims it had to rebuild because of Jensen's failure to construct them according to the plans. The evidence on the necessity of rebuilding these catchbasins was conflicting. Jensen testified that he built these catchbasins according to stakes set out by the engineers, and that the error was that of the engineers and not his mistake. Therefore, the disallowance of this item is supported. A different situation exists as to items 8 and 9.

Item 8 refers to certain sidewalks that were damaged by Jensen and repaired by Union at a cost of $85. As we read the record the evidence was uncontradicted that Jensen's equipment caused this damage. (R.T. 124, 1. 26, to p. 125, 1. 8.) We have not been referred to any conflicting testimony, nor have we found any in the record. This being so, this item should have been allowed as a credit.

Item 9 is even more important. It refers to the refilling of a portion of a certain trench in which a 48-inch pipe was laid at a cost to Union of $1,398.40. The court disallowed this item, but, strangely enough, allowed item 4, which is for backfilling another portion of the same ditch, and repaving a portion of the overlying road. There was much conflicting testimony over this ditch. Jensen, who was required under his contract to refill the ditch, did so by pushing on the dirt

with a bulldozer. There was a great deal of evidence that this method was improper because it did not pack in the dirt tight enough to prevent settling. Jensen and several of his witnesses testified that his method of refilling the ditch was correct, and that the settling was caused by factors over which he had no control. Union, at the request of the city, enlarged the ditch and flooded it to settle the fill. Some of the new pavement over the ditch settled and Union repaved. Union, in items 4 and 9 set forth in its answer claimed an offset for this repacking and repaving of the trench. Item 4 is for removing the defective filling, repacking and repaving that portion of the trench on Hazelwood Drive and Maywood Way. The trial court allowed this as an offset in the amount of $2,448.35. Item 9 is for the cost of repacking the portion of the trench at the extreme northwest portion of Wildwood Drive. This cost Union $1,398.40. This item was disallowed by the trial court. These findings are inconsistent. There was no difference between the two sections of the trench. Both sections admittedly settled. Both sections were admittedly repacked by Union. Either the settling was or was not caused by the methods employed by Jensen in refilling. If such methods were faulty, Union was entitled to offset both items 4 and 9; if the settling was caused by factors not related to Jensen's methods of repacking, neither item should have been allowed. The trial court in its ineffectual order of October 3, 1949, recognized that there was something wrong with its findings on this issue because the court ordered additional evidence taken on "the sewer repair bill in the sum of $1398.40."

From what has been said it is obvious that the judgment must be reversed. ■ While findings must be given a liberal construction to the end of supporting rather than defeating a judgment (*Davis* v. *Stulman*, 72 Cal.App.2d 255 [164 P.2d 787]), that rule cannot be used to uphold findings that are unsupported or inconsistent with each other. The trial court recognized that errors had been committed in the findings and tried to correct these errors, but it acted too late. Under the circumstances it must be held that it was an abuse of discretion to deny the motion for a new trial by operation of law.

The judgment appealed from is reversed.

Bray, J., and Wood (Fred B.), J., concurred.