[Civ. No. 25442. Second Dist., Div. Two. Aug. 17, 1962.]

KENNETH M. SNAPP et al., Plaintiffs and Appellants, v. STATE FARM FIRE AND CASUALTY COMPANY, Defendant and Appellant.

Roger Bentley for Plaintiffs and Appellants.

Bert W. Levitt, David C. Bogert and Long & Levit for Defendant and Appellant.

HERNDON, J.—This is an appeal both by plaintiffs and defendant from the judgment rendered in an action for declaratory relief. Plaintiffs filed their action against defendant praying for a judgment declaring the rights and obligations of the parties under a policy of insurance issued by defendant relative to damage to the insured premises resulting from a landslide.

The policy was written in the amount of $25,000 for a term of three years, commencing November 15, 1956, and consisting of the California Standard Form Fire Insurance Policy and an endorsement which extended the coverage to insure against all risks of physical loss to the property described therein, subject to certain exceptions not involved in this proceeding. The facts regarding the damage and cause thereof are not in dispute; the issue is whether or not there was coverage under the terms of the policy. The findings of the trial court, except insofar as they contain seeming ambiguities that are more apparent than real, are well supported by the evidence.

The evidence, in summary, indicated that plaintiffs' residence, and those of at least two of their neighbors, were built upon a fill which, as subsequent investigation revealed, was poorly made. Due to this potentially unstable fill and an unusually heavy rainfall, the land beneath plaintiffs' residence commenced to move laterally during the term of the policy, resulting in damage to the structure, including its foundation. The original foundation, though apparently adequate to support the building prior to the land movement, proved to be insufficient after the earth movement commenced. It is not claimed that plaintiffs were in any way personally responsible for the poor quality of the fill or that they knew of its inherent danger with respect to the potential inadequacy of the foundations of their building.

The findings of the court will be dealt with in greater particularity during our discussion of the issues raised on this appeal. The conclusion reached by the court upon its findings

was that plaintiffs were entitled to recover $8,168.25, including: $6,684 for damage to the *habitable* portions of the insured dwelling *as of the termination date of the policy*; $784.25 expended by plaintiffs to that date for reasonable protective measures, and $700 for the fencing and sprinkling system which were damaged by the landslide. It is primarily the correctness of these conclusions which presents the issues to be determined on this appeal. We feel it more expedient to deal with the cross-appeal initially, because our disposition of the contention made therein will, in large measure, dispose of the issues raised by plaintiffs' appeal.

Defendant contends that the policy does not cover the loss here involved, arguing that it was not a *fortuitous* event and relying upon the following language of the trial court's seventh finding: "Because of the instability of said fill, the earth movement which constituted the landslide was inevitable." However, the eighth finding expressly states: "That said landslide was and is a fortuitous event and is not a risk excluded by the terms and conditions of the contract of insurance entered into by the parties." This finding is supported by the evidence, although the latter portion of it may be regarded as a conclusion.

If sufficient information were available to geological experts, the possibility or probability of *all* earth movements might be forecast with accuracy. Further, after any movement of land has occurred it might be said to have been "inevitable" with semantic correctness, but such "inevitability" does not alter the fact that at the time the contract of insurance was entered into, the event was only a *contingency* or *risk* that might or might not occur within the term of the policy. The cases cited by defendant in support of its contention are not in point because they deal either with attempts to apply a "warranty of fitness" to property not damaged by external causes, or, as in the case of *Fireman's Fund Ins. Co. of San Francisco* v. *Hanley*, 252 F.2d 780, with a situation in which the defense was that the landslide involved was caused by the erosion of ocean waves, a risk expressly excluded from the coverage of the policy there under consideration. The same exception also appears in the instant policy but is not an issue herein.

Turning next to plaintiffs' appeal, their primary contentions are that the trial court erred in (1) making an award only for the damage done to the *"habitable* portion of the premises" and excluding damage done to the "founda-

tion," and (2) limiting the award to the damage actually sustained *prior to the expiration date of the policy.*

 In this regard, the apparent ambiguity in the findings must be resolved, and while findings must be given a liberal construction to the end of supporting rather than defeating the judgment, this rule cannot be used to uphold findings that are unsupported or inherently and substantially inconsistent with each other. (*Jensen* v. *Union Paving Co.,* 103 Cal.App.2d 164, 171 [229 P.2d 121].)

The seventh finding states in regard to the landslide that "this movement is still active and is without definite prospect of stabilization." This finding not only is supported by the record, but all the experts who testified agreed that, unless a way were devised to halt such movement or to protect the structure therefrom, the dwelling eventually would be destroyed completely.

However, in its thirteenth finding the court found, "That the loss sustained by plaintiffs to said insured premises resulting from landslide was ascertainable and terminable on November 15, 1959, the expiration date of said policy, and the contract of insurance between the parties does not protect plaintiffs against future or continuing damage or loss occurring after the expiration date of the policy as a result of said landslide which commenced during the policy period."

While the court perhaps could have determined the amount of damage actually done to the structure up to any given date, it is apparent from the other findings and the undisputed evidence that this was not, and could not have been, intended to be a computation of the full extent of the damage that eventually would result from the event insured against and the latter portion of finding No. 13 so indicates. While the loss sustained up to a given date may have been "ascertainable," the question whether the liability of the insurer was "*terminable*" on such date, or whether the defendant was liable for the "continuing damage or loss" is a *legal* rather than *factual* issue. We have concluded that the trial court erred in deciding this issue.

To permit the insurer to terminate its liability while the fortuitous peril which materialized during the term of the policy was still active would not be in accord either with applicable precedents or with the common understanding of the nature and purpose of insurance; it would allow an injustice to be worked upon the insured by defeating the very substance of the protection for which his premiums were paid.

■ Once the contingent event insured against has occurred during the period covered, the liability of the carrier becomes *contractual* rather than *potential* only, and the sole issue remaining is the extent of its obligation, and it is immaterial that this may not be fully ascertained at the end of the policy period. (*Davis* v. *Connecticut Fire Ins. Co.,* 158 Cal. 766, 772 [112 P. 549, 32 L.R.A. N.S. 604]; *Pruitt* v. *Hardware Dealers Mut. Fire Ins. Co.,* 112 F.2d 140, 142; *Pfeiffer* v. *General Ins. Corp.,* 185 F.Supp. 605, 607 et seq.)

■ The second issue concerns the extent of the defendant's liability to repair, restore or replace the insured premises. In support of the court's award, defendant seeks to draw certain distinctions between the words ''Dwelling Building'' as used in the policy here involved and the word ''Dwelling'' used in policies considered by the courts in other cases. Insofar as this reasoning seeks to divide the ''habitable portions'' from their ''foundation portions,'' or to consider the structure apart from the land on which it is placed, it fails to impress.

■ The plain intent of the policy here involved, as in any contract agreeing to indemnify the insured in the event of certain contingencies, is that the insured will be made whole to the extent of the coverage contracted.

Finding No. 12 reads: ''That the original foundation was not designed to protect the insured premises from lateral earth movement and was not constructed to adequately protect the insured premises from vertical or lateral earth movement and therefore restoration of the foundation to its original condition will not prevent further damage to the insured premises.'' This is doubtless true and it is difficult to imagine how a homeowner could be expected to build a foundation so extensive as to protect against all possible land movements. It is for this reason, presumably, that this type of insurance is issued and purchased.

Finding No. 11 states: ''That there is no evidence of the nature and extent of damage to the foundation portion of the insured premises; that there was no evidence of the cost of repairing or replacing said foundation to its original condition.'' The foregoing statement is partially correct in that all the experts agreed that it would be pointless to seek to restore the structure, including its foundation, to its original form in view of the altered condition of the land supporting the structure. Finding No. 12 above quoted so determined.

However, this is not to say that no evidence was introduced to indicate that the plaintiffs might be restored to their former

position as the occupants of a secure building by means of a foundation adequate to the changed condition of the land. In Finding No. 16 the court stated: ''That to provide the insured premises with adequate lateral and vertical support and to prevent further damage to the insured premises resulting from said landslide, a redesigned and improved foundation is necessary and the reasonable cost of such redesigned and improved foundation is in excess of Eighteen Thousand ($18,000.00) Dollars.''

It need not be determined whether the policy here involved covers the land beneath the dwelling, per se, to agree with the reasoning of the court in *Pfeiffer* v. *General Ins. Corp., supra,* 185 F.Supp. 605, wherein under a very similar factual situation, the court stated at page 608: ''It appears . . . that no amount of repairs to the present structure *alone* will cure the damage or replace the dwelling until the earth movement under the structure is stabilized.

''The proof is clear that the land beneath the house is unstable and is part of a slide which is presently active. To rebuild the house or repair the garage until the underlying land is stabilized would be contrary to the weight of expert testimony elicited during the trial. . . . Must the plaintiff await the result of fire from disturbed gas lines and other myriad difficulties and hazards in rebuilding or repairing the house on a constantly shifting and sliding mass? . . .

''It seems within the fair intendment of the defendant's contractual obligations that, when it appears proximate and certain that additional slides will occur, to require plaintiffs to repair the house and garage on a mass of shifting earth is to render abortive their rights and to place a construction thereon that results in an absurdity. Until the earth movement, i.e., the landslide, is stabilized, the dwelling will continue to suffer damage and the occupants imperiled.'' (See also *Harman* v. *American Cas. Co. of Reading, Pa.,* 155 F. Supp. 612, 613.)

The court found in Finding No. 14, ''That the reasonable cost of replacement of the habitable portion of the insured premises is Thirty-Thousand Two-Hundred Forty ($30,240.00) Dollars, which excludes the foundation, patio, sprinkler system and fencing, but includes a concrete slab.'' This finding and finding No. 16 above quoted are amply supported by the evidence.

Since we have concluded that defendant could not terminate its liability once the hazard insured against had

materialized, it follows that defendant should have exercised its option to repair or restore the premises or to replace them to the extent of the policy coverage. Since it appears from the above findings that either alternative would exceed the limits of defendant's contractual liability under the policy, the judgment should have required defendant to fulfill its obligation immediately by payment to plaintiffs of such maximum amount.

This consideration brings us to the final issue raised. Plaintiffs contend that defendant is liable beyond the $25,000 face amount of the policy.　　This assertion is made on the basis of subparagraph No. 6F (3) of the endorsement which provides: ''In case of loss to a building covered under this policy where the whole amount of insurance applying to said building for the peril causing the loss is eighty percent (80%) or more of the full replacement cost of such building, the coverage of this policy applicable to such building is extended to include the full cost of repair or replacement (whichever is smaller) without deduction for depreciation.''

This provision, however, clearly is intended only to indicate that defendant's right provided for in 6F(2) to prorate its liability for the cost of repair where the amount of insurance is less than 80 per cent of the full replacement cost shall not apply when that percentage is reached. Nothing therein appears which would extend the liability beyond the policy limit itself. The next and final paragraph of 6F so provides: ''This Company's liability for loss under this policy including this extension of coverage shall not exceed the smallest of the following amounts, (i), (ii), or (iii); (i) the amount of insurance under this policy applying to the damaged or destroyed building; . . .''

For the foregoing reasons, the judgment is reversed with directions to enter judgment for plaintiffs in the amount of $25,000. Plaintiffs' purported appeal from the order denying their motion for a new trial is dismissed.

Fox, P. J., and Ashburn, J., concurred.

A petition for a rehearing was denied September 12, 1962, and the petition of defendant and appellant for a hearing by the Supreme Court was denied October 10, 1962.