**Estella K. ASH, Plaintiff,**

v.

**SAFECO INSURANCE COMPANY OF AMERICA, a Washington corporation, Defendant.**

No. CV 85–5799 CBM.

United States District Court, C.D. California.

Oct. 21, 1986.

Order Denying Motion Dec. 5, 1986.

---

evidence for failing to consider pre–1972 and outside agency placement data.

## MEMORANDUM ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT.

CONSUELO BLAND MARSHALL, District Judge.

This matter is before the court on the motion of plaintiff Estella K. Ash for summary judgment. A hearing was held on August 11, 1986 before the Honorable Consuelo B. Marshall, United States District Judge, presiding. The court having reviewed the pleadings, opposition, reply and exhibits attached thereto, and having heard the arguments of counsel, hereby issues the memorandum order granting plaintiff's motion for summary judgment.

### FACTS

This action involves a claim by plaintiff Estella K. Ash against defendant Safeco Insurance Company of America for the

payment of policy benefits under an insurance contract issued by Safeco covering plaintiff's home located at 20644 W. Big Rock Drive in the Big Rock Mesa area of Malibu. Plaintiff's insurance policy, No. OL–30696, covers up to $125,000 for plaintiff's dwelling and $12,500 for plaintiff's appurtenant structures.

Ash's home was severely damaged due to an active landslide encompassing virtually the entire Big Rock Mesa area. In addition to physical and structural damage to her dwelling, the ground underlying and supporting the dwelling and its appurtenant structures became unstable. This condition will continue to cause further damage until the earth movement associated with the landslide ceases.

After the landslide, Ash made a demand for the entire policy limits for the damage to her home. While acknowleding liability for the costs to repair the existing physical damage to the house itself, Safeco interpreted its liability to be limited to the cost to repair the existing physical damage to the house itself. Safeco thereafter paid $34,862.65 to plaintiff which represented its estimate of the costs to repair the physical damage to the house. This payment was made in partial satisfaction of plaintiff's claim, without prejudice to plaintiff's further rights to pursue her claim against Safeco for the remaining policy limits. No portion of this partial payment was for stabilization costs of the ground underlying and supporting the dwelling.

On December 12, 1985, this court granted plaintiff's motion for partial summary judgment determining that defendant had an obligation under the homeowner's policy to provide stabilization costs if such repairs were needed. The December 12th decision is hereby incorporated by reference.

## DISCUSSION

The issues presently before the court are whether stabilization efforts were necessary in 1984 when Ash first submitted her claim to Safeco to repair her dwelling and appurtent structures, and if so, the costs of such repairs.

Ash now seeks a judgment from the court that she was entitled to payment for the necessary costs to repair the soil underlying and supporting her home when she first submitted her claim to defendant in 1984. In support of her motion, plaintiff submits uncontradicted evidence supporting the need for stabilizing the land underlying her house and the costs of such repair when her home was initially damaged by the landslide in 1984. Defendant raises several arguments in opposition to the motion. First, defendant claims that there is a question of fact whether plaintiff's damages were caused by the landslide. Second, defendant claims that an insured should not be able to recover the total costs of stabilization unless the home is uninhabitable or threatened to be destroyed in the near or proximate future. Third, defendant argues that the present extent of repairs necessary for plaintiff's dwelling is a disputed issue of material fact.

### 1. Proximate Causation And Resulting Damage.

■ This court previously found that "[p]laintiff's home, which is covered by the policy mentioned above [the Safeco policy,] *has been damaged due to a landslide in the Big Rock Mesa area of Malibu.*" (emphasis added). This finding was based upon the stipulation entered by the parties in the Joint Report of Early Meeting of Counsel. Now, at this late juncture, Safeco asserts that Ash has not met her burden of proving proximate causation and resulting damage under the homeowners insurance policy. However, Safeco is bound by the stipulation and the court's previous findings on this issue.

### 2. Plaintiff's Entitlement To Stabilization Costs.

■ Safeco contends that an insurance company has no obligation to pay for the costs of stabilization unless the home is uninhabitable or threatened to be destroyed in the near or proximate future. This contention fails to take into consideration the fact that plaintiff is a 78 year old widow on

a fixed income who cannot afford to move to alternate housing without initially receiving the proceeds from her insurance policy. Although Ash has sustained severe structural and physical damage to her dwelling and appurtenant structures, she is placed in a situation of having to litigate for the proceeds of her policy prior to permanently repairing the damage or to exercising her option to move elsewhere. Uninhabilitability of a dwelling has never been stated to be a prerequisite to payment under an insurance policy.

■ An insurance company's contractual obligation to provide for the proceeds under a homeowner's policy becomes operative immediately whenever the contingencies insured against in the policy occurs. Once the contingent event insured against occurs, "the liability of the carrier becomes *contractual* rather than *potential* ... and the sole issue remaining is the extent of its obligation." *Snapp v. State Farm Fire & Cas. Co.*, 206 Cal.App.2d 827, 832, 24 Cal. Rptr. 44 (1962) (emphasis in original). As stated by the court in *Pfeiffer v. General Insurance Corporation*, 185 F.Supp. 605, 608 (N.D.Cal.1960), "[a] contract of insurance is an agreement to indemnify the insured against loss from contingencies which may or may not occur. When the contingency arises, then the liability of the insurer becomes a contractual obligation." *Pfeiffer*, 185 F.Supp. at 608.

In the instant action, there is no question that the contingencies insured against have occurred. In the previous partial summary judgment, the court adopted the parties' stipulation on the following facts: 1) that the Big Rock Mesa landslide caused damaged to Ash's home, and; 2) that geological reports indicate that continuous surficial earth movement is expected for sometime into the future. Because of the stipulation, the facts present a situation where plaintiff has sustained landslide damage to her dwelling, and future movement of the earth is expected.

The sole issue previously before the court was whether Ash's homeowner policy provided coverage for the direct cost neces-

sary to repair her "dwelling," including the stabilization of the land underlying and supporting the dwelling and appurtenant structures. The court expressly found that the homeowner policy required payment for stabilization costs, if such costs were necessary. Thus, under this court's previous judgment, if Ash establishes that stabilization costs were necessary at the time she filed her claim with Safeco in May 9, 1984, she is entitled to the costs for stabilization, up to the full policy limits, regardless of whether she continues to reside in her home.

■ Ash has established, through competent engineering reports, declarations, and deposition testimony, that the land under and about the house was not stable in 1984. In addition, Ash has presented substantial evidence that surficial movements will continue for an indeterminate period of time. The report submitted by Safeco's own expert, confirms this fact: "[d]istress to the Ash property has been substantial and new ground cracks have appeared on the property in the last few weeks. We interpret this recent cracking to be the result of residual movement within the slide mass as the result of post-slide redistribution ... It is likely that, when the structure is repaired, releveling will be required together with the strengthening of the foundation and walls." This report is substantiated by deposition testimony wherein Safeco's expert, Dennis Evans, acknowledges that there is current earth movement in Big Rock in the form of post-slide stress redistribution which continues to affect the Ash dwelling. He indicated that permanent and lasting repairs to the Ash dwelling would require that the land be stabilized, and that the cost to do so would exceed the policy limit of $137,500.

■ Safeco argues that stabiliztion costs may be unnecessary at the present time since the land underlying the land will ultimately stabilize itself due to dewatering efforts. This "wait and see" approach, however, is contrary to caselaw. In *Pfeiffer*, the court was faced with a similar situation where plaintiff homeowners sued

to obtain the proceeds of an insurance policy for landslide damage sustained to their home. Defendant refused to pay for the costs for stabilization and limited their liability to repair of the house itself. The court held that stabilization costs were covered under the homeowner's policy since the term "dwelling" includes not only the actual dwelling, but also the land underlying the house. The court rejected defendant's argument that plaintiffs should wait some indefinite future date in measuring their rights under the policy, stating that "[i]t seems within the fair intendment of the defendant's contractual obligations that, when it appears proximate and certain that additional slides will occur, to require plaintiffs to repair the house and garage on a mass of shifting earth is to render abortive their rights and to place a construction thereon that results in an absurdity." *Pfeiffer*, 185 F.Supp. at 608. *See also, Snapp v. State Farm Fire & Cas. Co.*, 206 Cal.App.2d 827, 833, 24 Cal.Rptr. 44 (1962).

In the case at bar, since Ash has adequately established her entitlement to the proceeds under her homeowner's policy when she filed her claim in 1984, she should not be forced to wait an indeterminate period to collect under her policy.

■ Not having presented any evidence to contradict plaintiff's evidence that her home was below the acceptable safety level for new homes in the County of Los Angeles in the previous motion, defendant now seeks reconsideration of the court's previous order pursuant to Local Rule 7.16. The court is not persuaded that there exists "a material difference in fact or law from that presented to the court before such decision that in the exercise of reasonable diligence could not have been known" to the moving party. Local Rule 7.16. Defendant places great emphasis on the fact that plaintiff's home was constructed in 1956, and therefore, the safety factor for new buildings should not be applicable. This fact, however, is not material to plaintiff's entitlement to stabilization costs under policy.

### 3. Extent of Necessary Repairs.

Safeco argues that an issue of material fact exists as to the extent of necessary repairs for plaintiff's dwelling. In essence, Safeco asserts that the dewatering program presently implemented by third parties is the most effective means of stabilizing the area and ceasing landslide movement, and eventually, the land will stabilize itself in due course. A similar argument was explicitly rejected in *Hughes v. Potomac Ins. Co.*, 199 Cal.App.2d 239, 18 Cal. Rptr. 650 (1962).

In *Hughes*, plaintiff homeowners sustained landslide damage to their home, and pending litigation of their suit against the insurer, a third party replaced the soil beneath the homeowners' building and stabilized the building. The insurer argued that because of the third party's action, the homeowners could not be deemed to have suffered any damage which would entitle them to recover under the policy. The court adopted the rule that "an insurer is not entitled to the benefit of the fact that the insured's loss has been cured by the act of a third party, but that its liability under the policy remains unaffected." *Hughes*, 199 Cal.App.2d at 250, 18 Cal.Rptr. 650.

■ Applying the language of *Hughes* to the case at bench, the court hereby concludes that the insurer is liable under the policy despite any benefits which inure to the insured by virtue of dewatering efforts. The amount of Ash's loss became fixed immediately after the occurrence of the landslide and submission of the claim in 1984. Any other result would have the effect of allowing the insurer to indefinitely delay payment of the policy proceeds pending the gratuitous acts of third parties, and thereby allow the insurer to continuously reap windfalls from an insurance policy.

To accomplish permanent repairs to the Ash dwelling and appurtenant structures in 1984, Ash presents uncontradicted evidence that it was necessary to stabilize her property and to prevent further movement at that location. This could not be accom-

plished until the local movement along the periphery of the landslide mass stopped. The repair costs necessary both in 1984 and at this time to stabilize the Ash property and to prevent further movement of the land underlying and supporting the Ash dwelling and appurtenant structures greatly exceeds the amount of the insurance policy.

Safeco has failed to submit any opposing declarations that stabilization costs were not necessary at the time the claim was filed in 1984, or that the stabilization costs were not in excess of $137,500. Instead, Safeco's evidence disputes the present costs of remedial repairs. As discussed previously, this position misconstrues the insurer's liability to provide for proceeds under the contract when the contingency arose in 1984.

Ash has presently submitted evidence that in mid–1984, stabilization of the ground underlying and supporting her home was necessary before permanent repairs could be effectuated and further, that such repair costs clearly exceeded her policy limits of $137,500. Therefore, Ash is entitled to immediate payment of the full coverage available under her homeowner's policy.

ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION AND GRANTING PLAINTIFF'S MOTION FOR SANCTIONS.

This matter is before the court on the motion of Safeco Insurance Company of America for reconsideration of this court's summary judgment decision issued on October 23, 1986 on the grounds that: 1) the court failed to consider material facts, and; 2) newly discovered evidence warrants reconsideration of the judgment. Plaintiff Estella Ash opposes the motion as frivolous and seeks imposition of sanctions pursuant to F.R.Civ.P. 11.

The court having reviewed the pleadings, opposition and reply hereby issues the following order:

IT IS HEREBY ORDERED THAT defendant's motion for reconsideration is DE-NIED. This court thoroughly considered all of the pleadings and exhibits annexed thereto prior to the issuance of the court's summary judgment decision of October 23, 1986. In defendant's motion for reconsideration, it attempts to relitigate the issues which were previously raised by the parties and decided by the court.

Defendant's contention that "new material facts" now exists which could not have been presented at the time of the original hearing is unpersuasive. Defendant fails to adequately explain why these exhibits could not have been obtained prior to the original hearing or why it never requested any continuance of the summary judgment motion pending discovery.

■ For instance, the videotape of plaintiff's property which was received by defendant on or about August 3, 1986 was not requested until May 14, 1986. Defendant fails to explain why it delayed requesting access to plaintiff's property to film the surface conditions until such late date. In addition, two of the depositions transcripts (depositions of John Schmidt and Michael Tucker) attached to the moving papers are the depositions taken of defendant's employees in July of 1986. Again, defendant fails to explain why these depositions which were taken prior to the original hearing date were not submitted earlier.

■ Thus, defendant fails to establish that it exercised due diligence in bringing the "new evidence" before the court at the time of the original hearing. Under the circumstances of this action, the court concludes that sanctions in the form of attorney's fees to opposing counsel is warranted since plaintiff violates the prohibition against repetition of arguments set forth in Local Rule 7.16. Throughout the course of this litigation, defendant has established a pattern of relitigating issues which the court has previously determined as a matter of law. By doing so, defendant has unnecessarily and unreasonably multiplied the litigation. Despite the prohibition against repeating any arguments made in the underlying motion, defendant's motion

for reconsideration reiterates the same arguments previously made which is in direct contravention of Local Rule 7.16. Therefore, the court orders that defendant pay to plaintiff sanctions in the amount of $2,400 for attorney's fees incurred in opposing this frivolous motion for reconsideration within twenty days from the entry of this order.