[No. D006512. Fourth Dist., Div. One. Nov. 18, 1988.]

HOME INSURANCE COMPANY, Plaintiff, Cross-defendant and Appellant, v.
LANDMARK INSURANCE COMPANY, Defendant, Cross-complainant and Respondent.

**COUNSEL**

Simon, Buckner, Haile & Migdal, Paul M. Migdal, Stuart L. Brody, Alan G. Buckner, O'Melveny & Myers, Martin Glenn, Martin S. Checov and Andrew J. Frackman for Plaintiff, Cross-defendant and Appellant.

Stephen V. Rupp, Anne M. Braudis, Alan R. Johnston, Duke, Gerstel, Shearer & Bregante, Gary J. Aguirre, James K. Eckmann, Arthur H. Skola, Aguirre & Eckmann, William R. Irwin, Tom M. Freeman, Stephen S. Sayad, Brobeck, Phleger & Harrison, Robert N. Sayler, Covington & Burling, John E. Heintz and Popham, Haik, Schnobrich & Kaufman as Amici Curiae on behalf of Plaintiff, Cross-defendant and Appellant.

Kevin Midlam, David H. Kidd, Robert P. Coffin and Ault, Deuprey, Jones, Danielsen & Gorman for Defendant, Cross-complainant and Respondent.

John F. McGuire, Jr., Neal H. Rockwood, Thorsnes, Bartolotta, McGuire & Padilla, Fred F. Gregory, Scott R. Hoyt, Gibson, Dunn & Crutcher, Jeffrey Kaufman, Nancy S. Coan, Lina M. Alta, Sheppard, Kaufman, England & Logan, Gary Elden, Andrew Butz, Isham, Lincoln & Beale, David M. Axelrad, Peter Abrahams and Horvitz, Levy & Amerian as Amici Curiae on behalf of Defendant, Cross-complainant and Respondent.

## OPINION

**WIENER, Acting P. J.—** The sole issue in this case is which of two first party insurers is liable for the loss from continuing property damage manifested during successive policy periods. On cross-motions for summary judgment brought by plaintiff Home Insurance Company and defendant Landmark Insurance Company, the court answered this question by ruling that Home, the insurer at the time of the first visible manifestations of damage, was responsible for the entire loss. As we shall explain we conclude the trial court ruled correctly and therefore affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Home and Landmark were successive property damage and liability insurers of the Hotel Del Coronado Corporation (Hotel). Home was on the risk from September 1, 1980, to October 1, 1981. Landmark insured the Hotel from October 1, 1981, and for all relevant time periods thereafter including the date the claim was made. The court found that the policies had identical definitions of "occurrence" and "property damage."[1]

---

[1] Both parties relied on the definitions of "occurrence" and "property damage" found in the liability (third party) provisions of their respective policies. The Home policy provides: "The company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence . . . .

" . . . . . . . . . . . . . . . .

" 'occurrence' means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the Insured; . . .

" . . . . . . . . . . . . . . . .

" 'property damage' means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period; . . ."

The Landmark policy reads: "The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

"A. bodily injury or

"B. property damage

For purposes of the cross-motions for summary judgment, the parties submitted an agreed statement of facts, which we quote in relevant part: "5. In or about February 1973, Hotel Del Coronado Corporation completed construction of seven-story oceanfront building improvement . . . commonly known as the 'Ocean Towers.'

"6. Said 'Ocean Towers' improvement consisted of 200 hotel rooms together with extended balconies substantially constructed of reinforced concrete block masonry together with precast and cast-in-place concrete over reinforcing steel bars and steel mesh.

"7. In or about December 1980, concrete on the exterior of the 'Ocean Towers' building and *certain* of the room balconies first began to visibly manifest deterioration in the form of concrete 'spalling' (cracking and chipping).

"After 1 October 1981, *other* room balconies first began to visibly manifest deterioration in the form of concrete 'spalling' (cracking and chipping).

"8. Said spalling of the concrete exterior and concrete room balconies continued from its first manifestations, becoming progressively worse, until on or about 1 December 1983 at which time Hotel Del Coronado Corporation completed repairs to the damaged room balconies and building exterior.

"Neither plaintiff nor defendant are able to ascertain the number of room balconies which first manifested the 'spalling' for the period December 1980 to 1 October 1981 and those which first manifested the 'spalling' thereafter. Also, neither plaintiff nor defendant are able to ascertain the extent of exterior concrete 'spalling' which first manifested itself prior to 1 October 1981 and that which occurred thereafter.

"9. The concrete 'spalling' was caused by defects in the design and construction of the concrete exterior of the building and concrete room balconies in that such structures were improperly reinforced with steel and contained chemical components which when confronted with sea air and sea

---

to which this insurance applies, caused by an occurrence . . . . " 'occurrence' means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured; . . .

" 'property damage' means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period; . . ."

spray began a continuous and progressive course of deterioration from the date of installation."

In 1983 and 1984 the Hotel Del Coronado made claims against both insurers for a sum in excess of $1 million. In November 1984 the insurers settled for $385,000 with Home contributing $285,000 and Landmark $100,000, each reserving the right to seek contribution from the other. Home filed an action for declaratory relief to determine how the payment should be apportioned. Landmark cross-complained. In the summary judgment proceeding the court decided against Home and awarded Landmark $100,000. This appeal ensued.

## DISCUSSION

### I

Pursuant to the agreed facts of this case, seven years elapsed between the design and construction defects and the first visible manifestations of concrete spalling. These facts do not allow us to consider the interesting question whether it is possible for the insured to have a covered loss when the loss is not reasonably observable by the insured during the period of the policy under which the insured seeks payment. We must limit our analysis and decision to the facts before us determining only which of two successive insurers is liable once the property damage has become apparent. ■ We note in this regard that in property damage cases "manifestation" routinely refers to when the damage first "becomes apparent." (See *California Union Ins. Co.* v. *Landmark Ins. Co.* (1983) 145 Cal.App.3d 462, 476 [193 Cal.Rptr. 461], citing *Snapp* v. *State Farm Fire & Cas. Co.* (1962) 206 Cal.App.2d 827 [24 Cal.Rptr. 44]; *Harman* v. *American Casualty Co. of Reading, Pa.* (C.D.Cal. 1957) 155 F.Supp. 612; and *United States Fidelity and G. Co.* v. *American Ins. Co.* (1976) 169 Ind.App. 1 [345 N.E.2d 267].) Given the facts of this case, we also do not consider whether the date of "manifestation" might differ from the date of "discovery" in some instances. Here the date of manifestation and discovery is the same.

■ In the circumstances of this case we believe we should follow the general rule that the date of manifestation determines which carrier must provide indemnity for a loss suffered by its insured. (*Snapp* v. *State Farm Fire & Cas. Co., supra,* 206 Cal.App.2d 827; *Remmer* v. *Glens Falls Indem. Co.* (1956) 140 Cal.App.2d 84 [295 P.2d 19, 57 A.L.R.2d 1379].) "[T]he time of the occurrence of an accident within the meaning of an indemnity policy is not the time the wrongful act was committed, but the time when the complaining party was actually damaged." (*Remmer* v. *Glens Falls Indem. Co., supra,* 140 Cal.App.2d at p. 88.) "Once the contingent event

insured against has occurred during the period covered, the liability of the carrier becomes *contractual* rather than *potential* only, and the sole issue remaining is the extent of its obligation, and it is immaterial that this may not be fully ascertained at the end of the policy period." (*Snapp* v. *State Farm Fire & Cas. Co., supra,* 206 Cal.App.2d at p. 832.) "To permit the insurer to terminate its liability while the fortuitous peril which materialized during the term of the policy was still active would not be in accord either with applicable precedents or with the common understanding of the nature and purpose of insurance; it would allow an injustice to be worked upon the insured by defeating the very substance of the protection for which his premiums were paid." (*Id.* at p. 831.)

Thus in situations involving continuing damage after the policy has expired, the insurer on the risk at the time the damage was first discovered is liable for the entire loss.

One of the reasons we granted rehearing was to examine whether rules applicable to indemnification for continuous property damage are equally applicable to cases involving first-party claims. Here the parties agree there is no meaningful difference between terminology employed in the property damage and liability sections of the Home and Landmark policies.[2] Courts frequently use the terms "loss" and "damage" interchangeably to describe events that trigger coverage. A property insurer decides whether there has been a "loss to property" during the policy period. Similarly, the liability insurer determines if there has been an "occurrence . . . resulting in property damage" while it was on the risk.

Based on the foregoing we hold that as between two first-party insurers, one of which is on the risk on the date of the first manifestation of property damage, and the other on the risk after the date of the first manifestation of damage, the first insurer must pay the entire claim. We wish to stress that our holding is limited to the stipulated facts before us.

---

[2] The property damage (first-party) provisions of the Home policy include the following language: "This policy insures against ALL RISKS OF DIRECT PHYSICAL LOSS TO THE PROPERTY COVERED HEREIN . . . .

"Policy Period; Territory: This policy applies only to loss to property during the policy period . . . ."

The comparable sections of the Landmark policy read: "THIS POLICY INSURES AGAINST: All risks of physical loss of or damage to the insured property except as hereinafter provided.

"1. Policy Period. Territory. SECTION I OF THIS POLICY APPLIES ONLY TO LOSS TO PROPERTY DURING THE POLICY PERIOD . . . .

"This policy insures against all risks of direct physical loss subject to the provisions and stipulations herein and in the policy of which this form is made a part."

Home argues[3] that responsibility for settlement payments should be apportioned between Home and Landmark based on the exposure theory and its variations commonly utilized in asbestos bodily injury cases (see *Ins. Co. North America* v. *Forty-Eight Insulations* (6th Cir. 1980) 633 F.2d 1212, rehg. gr. in part (6th Cir. 1980) 657 F.2d 814, cert.den. (1981) 454 U.S. 1109 [70 L.Ed.2d 650, 102 S.Ct. 686]) and recently applied in the context of continuing property damage in *California Union Ins. Co.* v. *Landmark Ins. Co., supra,* 145 Cal.App.3d 462, a case on which Home relies. Asbestos lung disease progresses slowly without symptoms for many years, but because scar tissue forms within a short time of inhalation, courts adopting the exposure theory view each deposit of scar tissue as a separate occurrence of bodily injury in a continuing tort. (See *Ins. Co. North America* v. *Forty-Eight Insulations, supra,* 633 F.2d 1212.) Thus under the exposure theory an insurer is liable for any policy period in which there is exposure to an injury causing agent. (*Hancock Laboratories, Inc.* v. *Admiral Ins.* (9th Cir. 1985) 777 F.2d 520, 525.)

*California Union* involved damages resulting from the installation of a leaking swimming pool. The pool leaked for more than 18 months following installation, during which time Landmark's policy period ended and California Union's began. Repairs were made during Landmark's policy period which were believed to correct the problem. However, because the underlying cause had not been determined, the repairs were ineffective and additional damage occurred during California Union's policy period. The court determined that the damage constituted "one occurrence" but nonetheless held California Union jointly and severally liable for damage which occurred during its policy period after the initial effort at repair. We are not persuaded that the reasoning of that case should apply here. We also note the same appellate division later limited the *California Union* holding to

---

[3] We use the word "argues" instead of "argued" for stylistic convenience only. "Argued" may really be more appropriate because Home now takes a different position than it took previously. Instead of seeking reversal, Home's supplemental brief on rehearing says our earlier decision was correct. This is a somewhat surprising statement by a losing appellant. Although we would like to attribute Home's change of heart to our persuasive prose, we will not do so. We recognize there are other factors which have affected its decision. Nonetheless, in spite of the peculiar adversarial posture of this case, dismissal is not the solution. In addition to the excellent briefs initially filed by both parties, we have had the benefit of amici briefs in which other interested groups have presented their respective points of view. Other factors also strongly militate against dismissal. This case has drawn considerable public attention, particularly from the insurance industry. We have also invested substantial time and effort reviewing the supplemental papers and listening to all parties, including amici, at oral argument. We have therefore decided to reach the merits.

These comments should not be construed as criticizing Home's recent insights into the legal issue before us. Rather they are just another way of emphasizing the unique factual and legal structure of this record and a reminder that as precedent this case must be considered only for the legal proposition considered. To suggest that this is not a case for all purposes would indeed be an understatement.

"the distinct circumstances of the case." (See *Harbor Ins. Co.* v. *Central National Ins. Co.* (1985) 165 Cal.App.3d 1029, 1038 [211 Cal.Rptr. 902].)

Common sense tells us that property damage cases, even those involving continuous damage such as the one before us, differ from asbestos bodily injury cases where injury is immediate, cumulative and exacerbated by repeated exposure. We believe the rationale for apportioning liability in the asbestos cases is not a basis to deviate from settled principles of law applicable to this case.

To apportion damage and hold an insurer liable for damage manifested in another insurer's policy period also violates the loss in progress rule, i.e., that an insurance company may insure only against contingent or unknown risks.[4] Liability will not be imposed under an all-property insurance policy where damages occur and are apparent before the date the policy takes effect. (See e.g., *Southern Cal. Edison Co.* v. *Harbor Ins. Co.* (1978) 83 Cal.App.3d 747 [148 Cal.Rptr. 106].)

We also have concern that *California Union* misapplied three pre-manifestation cases to hold a postmanifestation carrier jointly and severally liable. (*California Union Ins. Co.* v. *Landmark Ins. Co., supra,* 145 Cal.App.3d at pp. 477-478; see *Keene Corp.* v. *Ins. Co. of North America* (D.C. Cir. 1981) 667 F.2d 1034 [215 App.D.C. 156]; *Ins. Co. of North America* v. *Forty-Eight Insulations, supra,* 633 F.2d 1212; *Gruol Construction Co.* v. *Insurance Co. of No. Amer.* (1974) 11 Wn.App. 632 [524 P.2d 427].) Here the carriers were on the risk at the time of manifestation and postmanifestation. For all of these reasons we conclude the trial court properly ruled *California Union, supra,* is not controlling.

There are also valid policy considerations which support our decision here to rely on the settled body of law applicable to coverage of losses arising from manifested property damage. Our approach promotes certainty in the insurance industry and allows insurers to gauge premiums with greater accuracy. Presumably this should reduce costs for consumers because insurers will be able to set aside proper reserves for well-defined

---

[4] Insurance Code section 22 reads: "Insurance is a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from a contingent or unknown event."

By its terms, section 22 applies to both first-party and third-party cases.

Insurance Code section 250 provides in part: "[A]ny contingent or unknown event, whether past or future, which may damnify a person having an insurable interest, or create a liability against him, may be insured against, subject to the provisions of this code."

coverages and avoid increasing such reserves to cover potential financial losses caused by uncertainty in the definition of coverage. Legal uncertainty also may result in "stacking," which at oral argument was described as arising from the insured's erroneous belief that there may be more than one insurance policy to cover for potential losses. Although this type of uncertainty may be helpful to settlement judges desirous of arranging a satisfactory "package" with a number of insurers for the benefit of a claimant, "stacking" may also lull the consumer into believing there is adequate insurance coverage when there is none. The law should not create a disincentive to buy insurance for a period during which an insured should have losses covered for the benefit of damaged claimants.

## II

■ Home also argues the court erred in inferring that spalling sufficient "to put a reasonable person on notice of a possibly defective structure" (*United States Fidelity & G. Co.* v. *American Ins. Co., supra,* 345 N.E.2d 267, 272) occurred in December 1980 when Home insured the property.[5] Home asserts Landmark should be solely liable for the sum paid in settlement given the fact that no claim was made until 1983 and the damage occurred over a three-year period, two of which were during Landmark's coverage.

Because the question of when spalling is sufficient to put a reasonable person on notice of the possibility of a defect is a factual question (*United States Fidelity & G. Co.* v. *American Ins. Co., supra,* 345 N.E.2d at p. 272), we initially viewed Home's argument as an effort to raise a triable issue of material fact. However, Home has not asked the trial court or this court for relief from its stipulation that deterioration was first visibly manifested in December 1980. Nor would there have been a need for a stipulation if Home were contending there was a factual dispute as to the time damage was sufficiently manifested.

We conclude the court was reasonable in assuming the agreed statement of facts was intended by Home to include the inference that the December 1980 deterioration was severe enough to put a reasonable person on notice of a loss. The court did not err in holding Home liable for the entire settlement amount.

---

[5] We have been cited to no California case which adopts the "reasonable person" standard of *United States Fidelity* and our discussion should not be read as adopting that standard to determine when damage is sufficiently manifested.

## DISPOSITION

Judgment affirmed. Costs to Landmark Insurance Company.

Todd, J., and Thaxton, J.,* concurred.

---

* Assigned by the Chairperson of the Judicial Council.