[No. D011199. Fourth Dist., Div. One. Sept. 25, 1990.]

FIREMAN'S FUND INSURANCE COMPANY, Plaintiff and Appellant, v.
AETNA CASUALTY & SURETY COMPANY, Defendant and Respondent.

## COUNSEL

Mower, Koeller, Nebeker & Carlson, Keith D. Koeller and Lynn M. Bouslog for Plaintiff and Appellant.

Haasis, Pope & Correll and Robert V. Closson for Defendant and Respondent.

## OPINION

**NARES, J.**—Fireman's Fund Insurance Company (Fireman's Fund) appeals from a summary judgment entered in favor of Aetna Casualty & Surety Company (Aetna). Fireman's Fund and Aetna had insured Nielsen Construction Company (Nielsen) under liability policies issued during successive policy periods. Fireman's Fund was on the risk when construction defects were first discovered; Aetna was on the risk when the defects progressed and when their cause became known. Fireman's Fund paid Nielsen's liability and then sued Aetna to recover these sums.

On cross-motions for summary judgment based upon stipulated facts, and relying upon *Home Ins. Co.* v. *Landmark Ins. Co.* (1988) 205 Cal.App.3d 1388 [253 Cal.Rptr. 277] (hereafter, *Home*), the court determined Fireman's Fund was solely responsible for Nielsen's liability. In *Home*, this court held "in situations involving continuing damage after the policy has expired, the insurer on the risk at the time the damage was first discovered is liable for the entire loss." (*Id.* at p. 1393.)

On appeal, Fireman's Fund contends on various grounds that *Home* is distinguishable.[1] Although *Home* involved "first party" coverage and not a liability policy, as is involved here, we conclude that distinction, as well as

---

[1] Fireman's Fund does not contend we should overrule *Home*, a case decided by this court in 1988. Earlier this year in a criminal case this court stated, "[D]espite the inevitable differences among justices of appellate courts, stare decisis remains a vital principle. We hesitate to overrule a decision rendered by another panel of this court except for compelling reasons." (*People* v. *Bolden* (1990) 217 Cal.App.3d 1591, 1598 [266 Cal.Rptr. 724].)

Fireman's Fund's other contentions, does not make *Home* inapplicable. Accordingly, we affirm.

## FACTS AND PROCEDURE

The parties stipulated to the following facts. In January 1984 Nielsen agreed to perform structural repairs to the U.S. Grant Hotel (the Hotel). Nielsen subcontracted with J.L. Studios (J.L.) to restore the Hotel's exterior facade. J.L. applied a patching compound, "Duracal," to the Hotel's exterior surface, completing its work in October 1984.

In June 1985, Nielsen was notified the Hotel's exterior facade was cracking and spalling. Patching material had shrunk away from existing concrete. In some areas, patching material did not bond and could be peeled from existing concrete.

In August 1985, the Hotel told Nielsen plaster was deteriorating. The Hotel wrote Nielsen, "As plaster performed by J.L. Studios deteriorates, chunks of material are falling from the building which may pose a safety hazard."

In September 1985, Nielsen wrote to J.L., stating the concrete patching was "in a number of areas, found to be defective, and that J.L. Studios was expected to do all remedial work necessary."

Fireman's Fund issued liability insurance to Nielsen which terminated on October 1, 1985. Aetna issued liability insurance to Nielsen effective October 1, 1985.

The cracking and spalling was a continuous deterioration which occurred during both Fireman's Fund's and Aetna's policy periods, but which was "first noticed" during Fireman's Fund's policy period. As of October 1, 1985, the date Fireman's Fund's policy expired, Nielsen was uncertain whether all cracking and spalling was solely attributable to J.L.'s work, or was also the result of previous construction and natural deterioration.

In April 1986, during Aetna's policy period, Nielsen first learned that Duracal, the material J.L. applied, was only suitable for horizontal, not vertical surfaces. By applying Duracal to the Hotel's vertical surfaces, it is likely the material will deteriorate and fall.

In August 1987, the Hotel recovered a $354,192.91 arbitration award against Nielsen which Fireman's Fund satisfied.

In February 1988, Fireman's Fund commenced an action against Aetna for equitable subrogation, contribution, and declaratory relief. The parties filed cross-motions for summary judgment based upon the foregoing stipulated facts. The court entered judgment in favor of Aetna, stating: "[The] case seemed fairly clear to me. The carrier who was on the risk at the time of the occurrence pays. The occurrence is when the damage occurs. Doesn't seem to be any dispute but that the spoiling [*sic*] occurred during the time of the Fireman's Fund policy. Therefore, they have to pick up the entire tab.

". . . . . . . . . . . . . . . . . . . .

" . . . *Home Insurance* says at page 1393, situations involving continuing damage after the policy has expired, the insurer on the risk at the time the damage was first discovered is liable for the entire loss."

## DISCUSSION

### *Standard of Review*

■ Summary judgment is proper where no triable issue of fact is presented and the sole question is one of law. Where, as here, the facts are undisputed, "construction of an insurance policy presents a question of law. The appellate court is not bound by the trial court's interpretation. Rather, it must independently interpret the language of the insurance contract." (*Merced Mutual Ins. Co.* v. *Mendez* (1989) 213 Cal.App.3d 41, 45 [261 Cal.Rptr. 273].)

### *The Effect of Home* v. *Landmark*

■ In *Home*, this court determined which of two successive insurers was liable for losses resulting from continuing property damage manifested during successive policy periods. Much like the situation here, in *Home*, the parties stipulated that a building suffered damage when its concrete exterior began to deteriorate during one insurer's policy period and continued to deteriorate when a different insurer was on the risk. (*Home, supra*, 205 Cal.App.3d at pp. 1392-1393.) ■■■■■ Citing the "general rule" that the date of manifestation determines which carrier must indemnify a loss and the "loss-in-progress rule,"[2] this court held "as

---

[2] Although we did not define the "loss-in-progress rule" in *Home*, it is a rule which prohibits insurance coverage where the forces which eventually lead to a loss were an immediate threat of loss when the policy was issued. (See *Insurance Co. of North America* v. *U.S. Gypsum Co.* (4th Cir. 1989) 870 F.2d 148, 152-153.)

between two first-party insurers, one of which is on the risk on the date of the first manifestation of property damage, and the other on the risk after the date of the first manifestation of damage, the first insurer must pay the entire claim." (*Id.* at p. 1393.)

Attempting to avoid the obvious precedential effect of *Home*, Fireman's Fund contends (1) a different result is compelled by *California Union Ins. Co.* v. *Landmark Ins. Co.* (1983) 145 Cal.App.3d 462 [193 Cal.Rptr. 461]; and (2) *Home* is limited to its facts, which involve first party insurers and not liability insurers.

The short answer to Fireman's Fund's first contention is in *Home*, this court considered and rejected *California Union Ins. Co.* v. *Landmark Ins. Co.* In *Home*, we concluded *California Union* "misapplied three pre-manifestation cases" and was "not controlling." (*Home, supra,* 205 Cal.App.3d at p. 1395 Fireman's Fund offers no compelling reason why we should reexamine our previous refusal to follow *California Union* and the asbestos cases it relies upon in this property damage case.

Although no case stands for legal propositions it neither analyzes or discusses, in *Home*, this court took the unusual step of expressly limiting the holding to its facts. After announcing the rule of decision, the court stated, "We wish to stress that our holding is limited to the stipulated facts before us." (*Home, supra,* 205 Cal.App.3d at p. 1393.) Later, the court reiterated the opinion's narrow scope: "[A]s precedent this case must be considered only for the legal proposition considered. To suggest that this is not a case for all purposes would indeed be an understatement." (*Id.* at p. 1394, fn. 3.)

Understandably latching upon these statements, Fireman's Fund contends *Home* is inapposite because it is factually distinguishable. *Home* involved a claim by an insured against its insurer—a "first party" claim. In contrast, here Fireman's Fund's and Aetna's liability (if any) rests on a claim and arbitration award against its insured—a "third party" case. Noting this distinction and citing *Garvey* v. *State Farm Fire & Casualty Co.* (1989) 48 Cal.3d 395 [257 Cal.Rptr. 292, 770 P.2d 704], Fireman's Fund contends *Home*'s first party insurance rule cannot be applied in this third party case.

Even giving full force to the limiting statements in *Home*, distinguishing facts should not lead to a different result unless such facts have legal significance. Certainly no one would contend an automobile accident case involving a blue car should not be applied simply because the car now at

issue was green. Similarly here, the distinction between *Home*'s first party case and our third party case is not determinative unless the distinction is legally relevant *in this context.*

There are several reasons why the distinction between first and third party coverage is not legally significant in distinguishing *Home.* To the extent the rule in *Home* is based upon insurance policy language, the court actually applied the third party liability provisions rather than the first party property damage coverage. (*Home, supra,* 205 Cal.App.3d at p. 1390, fn. 1 ["Both parties relied on the definitions of 'occurrence' and 'property damage' found in the liability (third party) provisions of their respective policies."].) The court did so apparently because "there is no meaningful difference between terminology employed in the property damage and liability sections of the . . . policies." (*Id.* at p. 1393.) The insurance policies involved in *Home,* as well as the ones here, are apparently identical standard form CGL (comprehensive general liability) policies. The insuring clause and definitions contained in the *Home* policies, Fireman's Fund's policy, and Aetna's policy are identical.

Moreover, in holding that the insurer on the risk when damage first occurs is solely responsible, *Home* relied upon the "loss in progress rule"—Insurance Code[3] section 22—which, together with section 250, provides an insurance company can only insure against contingent or unknown risks.[4] In *Home* the court noted, "By its terms, section 22 applies to both first-party and third-party cases." (*Home, supra,* 205 Cal.App.3d at p. 1395, fn. 4.) Thus, to the extent *Home*'s rationale rests on the loss-in-progress rule, it, too, is fully applicable to a third party claim.[5]

Accordingly, when *Home* states it is to be limited to its facts, the relevant limitation is not whether a first or third party claim is involved. *Home* applied the third party insurance policy provisions and specifically noted its loss-in-progress rationale was equally applicable to third party claims.

Instead, the critical limiting fact in *Home* is it is a case where the claimant has apparently been fully satisfied by insurance proceeds and the case

---

[3] All statutory references are to the Insurance Code.

[4] Section 22 provides: "Insurance is a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from a contingent or unknown event."

[5] Fireman's Fund contends section 22 does not prohibit coverage under the Aetna liability policy because the cause of the spalling and Nielsen's liability had not become known before Aetna's effective coverage date.

Section 22, which applies to third party claims, states: "Insurance is a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from a *contingent or unknown event.*" (Italics added.) In the context of a liability policy, it is the damage which must be "contingent or unknown," and not the liability of the insured or cause of the damage.

involves allocating the loss *between insurers*. That fact is the critical one because it permitted the court to adopt a rule based more upon public policy considerations; there was no need to focus on the insurance policy language interpreted in light of the insured's reasonable expectation of coverage. (See *Hartford Accident & Indemnity Co. v. Sequoia Ins. Co.* (1989) 211 Cal.App.3d 1285, 1300 [260 Cal.Rptr. 190] [the principle that insurance contracts are to be construed against the insurer is *inapplicable* to cases concerning only the respective liabilities among insurers].)

 Like the situation in *Home*, here the issues arise in a context where the claimant has been fully satisfied and the case involves allocating loss between insurers. *Home* is, therefore, dispositive. Contrary to Fireman's Fund's contention, *Garvey v. State Farm Fire & Casualty Co., supra*, 48 Cal.3d 395 does not change the result.

In *Garvey*, the Supreme Court held it is "important to separate the *causation analysis* necessary in a first party property loss case from that which must be undertaken in a third party tort liability case." (*Garvey v. State Farm Fire & Casualty Co., supra*, 48 Cal.3d at p. 406, italics added.) However, although there are important differences between property damage insurance and liability insurance—not the least of which is causation analysis—the issues here do not even remotely involve causation. *Garvey* neither holds nor suggests that *all* legal principles developed in first party cases are inapplicable in third party cases. Thus, even if *Home*'s rationale was solely based upon first party insurance provisions (which it is not), *Garvey* does not prohibit its application to liability coverage.

### Insurance Policy Language

Both Fireman's Fund's and Aetna's policies contain identical insuring clauses. They provide: "The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'occurrence.'"

Fireman's Fund contends Aetna should be required to bear some portion of the loss because "the damage sustained at the [Hotel] falls squarely within the parameters of this insuring agreement."

However, the fundamental defect in Fireman's Fund's argument is the identical policy language was quoted in *Home*, which held the first insurer—the insurer on the risk when the loss first manifested—was solely liable.

In any event, even if we reexamined the insurance policy terms, *in this context of allocating a fully insured loss between insurers,* we would be inclined to interpret the policy to extend coverage to only the one policy period in which the damage first occurred. ■ The general principle that ambiguities in insurance contracts must be interpreted in favor of coverage is inapplicable where, as here, the case concerns only the respective liabilities of two insurers. (*Hartford Accident & Indemnity Co.* v. *Sequoia Ins. Co., supra,* 211 Cal.App.3d at p. 1300.) Thus, cases which interpret similar policy language in a dispute between the insured and the insurer are distinguishable.

"When two insurance companies dispute with each other, it is only just to construe the relevant contractual terms as they are written." (*Continental Ins. Co.* v. *Highlands Ins. Co.* (9th Cir. 1986) 793 F.2d 225, 226.) ■ Here, Fireman's Fund's and Aetna's policies contain identical insuring clauses derived from a standard form comprehensive general liability policy. Under such circumstances—where two insurers dispute the meaning of identical standard form policy language—the meaning attached to the provisions by the insurance industry is, at minimum, relevant. Discussing this standard form insurance policy, one insurance industry commentator purporting to explain the underwriter's intent has stated: "With the transition of the CGL policy from an 'accident' to an 'occurrence' basis it is contemplated that . . . property damage may be a continuing process over a long period of time . . . .

". . . . . . . . . . . . . . . . . . . . . . .

" . . . [I]t is intended that only one policy should apply to the physical injury to tangible property . . . and that is the policy in effect at the time the physical injury occurs. No matter how long thereafter the loss of use may extend, only that one policy is meant to apply, and then only to the extent of the 'each occurrence' limit.

". . . . . . . . . . . . . . . . . . . . .

". . . [T]he intent is to relate coverage to only the one policy period in which the onset of the condition happened." (Tinker, *Comprehensive General Liability Insurance—Perspective and Overview,* 25 Fed'n Ins. Coun. Q. (1975) 217, 241-242, italics added.)

Accordingly, we reject Fireman's Fund's assertion the Aetna policy, by its own terms, provides coverage.

*Delayed Discovery*

Damage to the Hotel first occurred during Fireman's Fund's policy period, but the exact cause of the damage was not discovered until Aetna's policy period. Under the "delayed discovery" rule, in some circumstances a cause of action does not accrue until a person actually discovers, or reasonably should have discovered his injury *and* its negligent cause. (See *April Enterprises, Inc.* v. *KTTV* (1983) 147 Cal.App.3d 805, 826 [195 Cal.Rptr. 421].) Invoking this doctrine, Fireman's Fund contends the loss should be deemed "manifested" during Aetna's policy period because it was not until then that the cause of loss first became reasonably known.

The purpose of the delayed discovery rule is to protect aggrieved parties who, with justification, are ignorant of their right to sue. (*Tusseling* v. *General Acc. etc. Assur. Corp.* (1976) 55 Cal.App.3d 623, 628 [127 Cal.Rptr. 681].) It is most commonly associated with actions against fiduciaries when strict adherence to the date of injury rule for commencing the statute of limitations would be unfair and would encourage wrongdoers to mislead their fiduciary to delay bringing suit. (*April Enterprises, Inc.* v. *KTTV, supra*, 147 Cal.App.3d at p. 827.) These policies which support the rule are not effectuated by applying the delayed discovery rule in this context. (*Tusseling* v. *General Acc. etc. Assur. Corp., supra*, 55 Cal.App.3d at p. 628.)

## DISPOSITION

The judgment is affirmed.

Benke, Acting P. J., and Huffman, J., concurred.